## JOSEPH JOHNSON *v.* THE STATE.

1. EVIDENCE—DEPOSITION OF DECEASED WITNESS.—The rules and practice of the common law have been substantially adopted by our Code in respect to admitting, as evidence for the prosecution, the deposition of a deceased witness, duly taken on a former trial of the accused by a court or an examining magistrate. The act of 1866 (Pasc. Dig., Art. 6605) expressly secures to the accused the right to use such evidence, but does not abrogate or impair that of the state. See the opinion of the court for a full exposition of these questions.

2. UNRECORDED MARKS are competent evidence to prove title or ownership of animals alleged to have been stolen. The prohibition in Article 4655, Paschal's Digest, is confined to unrecorded *brands*.

APPEAL from the District Court of Cooke. Tried below before the Hon. J. A. CARROLL.

The appellant was indicted and convicted of the theft of

a beef steer, and his punishment assessed at two years in the penitentiary.

*J. H. Garnett*, for appellant. In support of the 1st assignment of errors made by appellant, we refer, first, to the present Constitution of the state of Texas, Bill of Rights, Article 1, section 10; second, to Article 2490, Paschal's Digest, which guarantees to appellant the right of being confronted with the witnesses against him; also to Article 3103, Paschal's Digest, which shows that the rules of evidence known to the common law of England shall govern in the trial of criminal cases when not in conflict with the Code of Criminal Procedure or of some statute of this state.

We respectfully call the attention of the court specially to Article 6605, 2 Paschal's Digest, which is the only provision in the laws of this state authorizing the evidence taken before an examining court to be used in evidence, and this statute only confers upon the defendant the power to use such evidence upon the happening of certain contingencies.

If, at common law, the state would have the right to use this character of evidence, such right is certainly divested by reason of the above statute; and if it was deemed necessary by the legislature of the state to vest this right in the defendant, because the same has not heretofore existed, can or will it be said that the state possesses greater rights than the defendant, and can use evidence of this nature without the aid of a legislative enactment? We think not, and are compelled to infer from the reading of the last-mentioned Article (6605) that the right of the state to use such evidence is directly negatived.

The legal maxim *inclusio unius est exclusio alterius* applies. Such right, if vested in the state, would be opposed to the 10th section of the Bill of Rights, above quoted.

Appellant complains of the ruling of the court in admitting said evidence taken before an examining court, in behalf of the state, because he, on the trial of this case, was not confronted with the witness, but was simply facing an inanimate object, originating under the loose rules governing a justice's court.

We think the above authorities are more than sufficient to show that the court erred in admitting said evidence.

Article 3230, Paschal's Digest, provides a mode, in certain instances, for the taking of depositions in criminal cases by defendant, but the whole of chapter 1, title 8, of the Criminal Code of Procedure, which contains the only provisions of the Code upon the subject, makes no provision for taking depositions by the state, to be used against a defendant in a criminal trial; nor was the evidence used in this trial taken in accordance with those provisions, nor before an officer authorized under said provisions to take depositions. Depositions in criminal cases are unknown to the common law, and the statutory provisions of the state regulating the taking of the same must be strictly complied with. *Johnson* v. *The State*, 27 Texas, 765.

In addition to the authorities heretofore cited, the following are submitted to show that the court erred in admitting the evidence of the witness Addington, taken before an examining court. 1 Paschal's Digest, Article 987, provides that the common law of England shall remain in force in this republic until altered or repealed by Congress; Article 3103, 1 Paschal's Digest, that "the rules of evidence known to the common law of England, both in civil and criminal cases, shall govern, etc. The common law includes those principles, usages, and rules of action applicable to the government and security of person and property, which do not rest for their *authority* upon any express and positive declaration of the will of the legislature. Cooley's Bl., book 1, p. 67, and note 3; also 1 Kent, 468."

The common law of the American states consists of the common law of England as modified by English statutes previous to the colonization of America, so far as it has been found adapted to our altered condition and circumstances. 1 Cooley's Bl., book 1, p. 67, note 3, and authorities there referred to. The court will readily perceive the distinction between the common law as known in England and the American common law. Our statutes alone refer to, and authorize the adoption of, the common law as known in England, and *not* that which is known as the American common law.

The common law of England never provided that the examination of a prisoner should be had before a magistrate, and the testimony of the witnesses be reduced to writing, with the view of sending said evidence before a higher tribunal. This power was first conferred upon and exercised by magistrates under the statutes of Philip and Mary, between the years 1553 and 1558. 1 & 2 Phil. & M., ch. 13. See 1 Greenl. on Ev., from p. 256 to 260.

The common law of England which is in force in this state is the *lex non scripta*, or the unwritten law, as spoken of in 1 Blackstone's Commentaries, book 1, p. 67. The statutes of Philip and Mary form no part of the common law of England, they being a part of the *lex scripta*, or written law.

The only law which could give the state power to introduce the evidence of the witness Addington is that found in 1 Greenleaf on Evidence, p. 256 to 260, which is quoted from the statutes of Philip and Mary, and forms a part of the American common law, but does not form a part of the common law known in England, which is in force in this state.

*George McCormick*, Assistant Attorney General, for the State.

WHITE, J.   On the trial in the court below the prosecuting attorney offered in evidence the testimony of one Addington, which had been taken and reduced to writing at an investigation of this case in the examining court held by a justice of the peace before the finding of the indictment. The witness Addington was dead.   In regard to his testimony an agreement had been entered into between the counsel for the state and the defendant, as follows : " We agree that the following is the testimony of Nathan Addington, a witness for the state in the above numbered and entitled cause, which was taken before Esquire Hall, a justice of the peace in and for Cooke county, Texas, on the preliminary examination of the accused in said justice's court ; that the said Addington made said statement under oath duly administered by the said Hall, and that said Addington signed the same ; that said Addington is dead ; that he died after he made the statement, and prior to the trial of this cause in the district court ; that the cause now pending in this court is the same one which was examined in Esquire Hall's justice's court, and that the defendant Johnson was present when said examination was made, and had the opportunity to cross-examine the said Addington."

Notwithstanding this agreement, the testimony was objected to by defendant because, 1st, its introduction would be in violation of the Constitution of the state ; and, 2d, because it would be in violation of the statute, and inadmissible under the laws of the state.   These objections were overruled by the court, and the testimony was read ; to all of which the defendant saved his bill of exceptions, and here assigns the same proceedings as error for reversal.

The constitutional right claimed to have been infringed is the one guaranteed to the accused in all criminal prosecutions—that he " shall be confronted with the witnesses against him."   Bill of Rights, sec. 10, Art. 1, of the Const.

The statutory requirement claimed to have been violated

22

was that " the defendant upon trial shall be confronted with the witnesses, except in certain cases provided for in this Code, where depositions have been taken." Pasc. Dig., Art. 2490.

It is also insisted that the only statutory enactment known to our law authorizing the introduction of such testimony, in any case, by its very terms precludes the idea that the state, or any other party than the defendant, was empowered to take advantage of and use such evidence. The statute alluded to is in these words : " In all criminal prosecutions where the testimony of a witness has been reduced to writing, signed, and sworn to before the examining magistrate, or before any court, and the witness has died since giving his testimony, the testimony so taken and reduced to writing may be read in evidence *by such defendant* as proof of the facts therein stated upon any subsequent trial for the same offense ; provided, however, that in all other respects the testimony of such deceased witness shall be subject to the established rules of evidence in criminal cases. In every case the death must be established to the satisfaction of the court." 2 Pasc. Dig., Art. 6605.

It is further contended that the common law of England, which is obligatory when not in conflict with our Code (Pasc. Dig., Art. 3103), does not furnish a rule permitting the introduction of this character of testimony.

We do not think that either of these positions is well taken or tenable.

The common law of England was, to a limited extent, recognized and ingrafted upon the jurisprudence of this country in the plan and powers organizing a provisional government for Texas, which was signed and adopted the 13th of November, 1835. Article 7 of that instrument provides : " All trials shall be by jury, and in criminal cases the proceedings shall be regulated and conducted upon the principles of the common law of England; and the penalties

prescribed by said law, in case of conviction, shall be inflicted, unless the offense shall be pardoned or fine remitted." The Constitution of the republic of Texas contains this provision : " The Congress shall, as early as practicable, introduce by statute the common law of England, with such modifications as our circumstances, in their judgment, may require, and in all criminal cases the common law shall be the rule of decision." Art. 4, sec. 13. This was followed by the act of Congress of the 20th of January, 1840, and which is still in force, enacting "that the common law of England (so far as it is not inconsistent with the Constitution or the acts of Congress now in force) shall, together with such acts, be the rule of decision in this republic, and shall continue in full force until altered or repealed by Congress." Pasc. Dig., Art. 978.

With the adoption of our Codes this additional provision upon this subject became part of the law of the state, viz. : " The rules of evidence known to the common law of England, both in civil and criminal cases, shall govern in the trial of criminal actions in this state, except where they are in conflict with the provisions of this Code, or some statute of this state." Pasc. Dig., Art. 3103.

Construing these acts with reference to the extent to which they subject us to the authority of the common law, our supreme court have said : " It is a singular fact that although this state has adopted the common law by express legislative enactment, yet—unlike most, if not all, of the states which have adopted the common law—we have not, as they have, adopted all English statutes of a general nature up to a particular period, not repugnant to or inconsistent with the Constitution and laws of the state." *Paul* v. *Ball*, 31 Texas, 15 ; *Foster* v. *Champlin*, 29 Texas, 397 ; *Courand* v. *Vollmer*, 31 Texas, 397 ; *Barrett* v. *Kelley*, 31 Texas, 476 ; *Indorsement Cases*, 31 Texas, 693.

It is argued by counsel for appellant, in his very interesting

brief in this case, that "the common law of England never provided that the examination of a prisoner should be had before a magistrate, and the testimony of the witness reduced to writing, with a view of sending the said evidence before a higher tribunal. This power was first conferred upon, and exercised by, magistrates under the statutes of Philip and Mary, between the years 1553 and 1558." And he contends that because these statutes of Philip and Mary were not part of the *lex non scripta* or common law of England upon its adoption as the rule of decision in Texas, and have never been specially reënacted since, that, therefore, their authority does not obtain with us. The proposition may be correct. But although we have not adopted or reënacted, in so many words, these statutes of Philip and Mary, counsel seems to have overlooked the fact that we nevertheless have statutory provisions of identically the same character in our Code of Criminal Procedure. As, for instance : "Where parties charged with felonies are arrested and brought before a magistrate, the testimony of all the witnesses shall be reduced to writing, signed by them with their names and marks, and all the testimony thus taken shall be certified to by the magistrate." Pasc. Dig., Art. 2706. And again : "The examination of the witnesses shall be in the presence of the accused." Pasc. Dig., Art. 2708. And still again : "The magistrate before whom an examination has taken place upon a criminal accusation shall certify to all the proceedings had before him, and transmit them, sealed up, to the court before which the defendant is subject to be tried upon indictment or information," etc. Pasc. Dig., Art. 2762.

There is a striking analogy between these provisions of our statutes and the acts of 1 and 2 Philip and Mary, chapter 13, and 2 and 3 Philip and Mary, chapter 10, and the analogy becomes stronger when we consider that by neither the one nor the other is it expressly provided that the testi-

mony thus taken by the magistrate may be used, under any circumstances, in the subsequent trial on the indictment. 1 Bishop on Cr. Pro., sec. 1091.

In England the express authority to use such evidence on the final trial, where the witness was dead, was not conferred by law until as recently as 11 and 12 Victoria, chapter 42, section 17. 1 Bishop on Cr. Pro., sec. 1092. Let us, then, inquire what was the practice which obtained in the English courts in such cases prior to the act of 11 and 12 Victoria, chapter 42.

Mr. Archbold, in his standard work upon Pleading and Evidence (6th Am. ed., by Waterman, side page 148 ; 13th Lond. ed., pp. 213, 214), observes : "Although the statutes relating to the examination of witnesses against a prisoner before a justice of the peace previously in force (1 & 2 Phil. & M., c. 13 ; 2 & 3 Phil. & M., c. 10, and 7 Geo. 4, c. 64) contained no such express enactment as the above, it was yet determined in many cases, and recognized as a rule of law, that in all cases of examinations of witnesses, in cases of felony under these statutes, where they were taken in the presence of the accused and he had the opportunity of cross-examining them, the deposition of any such witness might be read in evidence against the accused on his trial in case the person who made the deposition was dead." See, also, 1 Bishop on Cr. Pro., sec. 1093. And Coleridge, J., said : " Before the enactment of 11 and 12 Victoria, chapter 42, I always understood the law was that, if a witness were absent by reason of death, the deposition was receivable in evidence against him." R. v. Scaife, 2 Den., cc. 281–286 ; 17 Q. B. 208.

The conclusion is doubtless true and correct, from these authorities, that this " rule of decision " and evidence in England, under a statute similar in every respect to ours, must have sprung from, and grown out of, the usages and practice of the common law ; and such being the case, under

our statutes, making the common law the rule of decision and evidence, the testimony of the witness Addington would have been legitimate and proper.

We do not think the act of 1866 (2 Pasc. Dig., Art. 6605) confers new rights upon a defendant which he did not theretofore possess in the premises, nor can we agree to the position assumed by counsel in this case—that it was intended, and that its phraseology operates, as a repeal of any essential rights which the state possessed. At the date of its passage there was no statute, as we have seen, giving to either party the right to introduce the testimony. Consequently there was no law to repeal, and, if there had been, repeals by implication are not favored. A fair construction of the statute, we think, only leads to the conclusion that the legislature intended, so far as the defendant was concerned, simply to place his right, by positive enactment, beyond the possibility of further cavil or doubt. The rights of the state were left in the same condition as before its passage—that is, they were left to be determined by the established rules of evidence in criminal cases, just as though this statute had never been adopted. If the legislature had intended to curtail or deprive the state of any of its rights—and that was one of the objects of the bill, as is contended—it is but reasonable to conclude that they would have embodied that object, when it was so easy to have been done, in the act itself. Failing to do so, the sequence becomes irresistible that such could not have been the intention.

Now, what are the established rules of evidence in such cases?

" Testimony of the statements of a deceased witness, given on a former trial between the same parties, touching the same subject-matter, has been admitted among the exceptions to the rule excluding hearsay evidence, from a very early period, and has been sanctioned by an unbroken

current of decisions, both in England and this country. It has been received *ex necessitate,* under proper precautions, as *secondary evidencè,* being the best evidence the circumstances of the case would admit of. The main reason for the exclusion of hearsay evidence is to be found in the want of the sanction of an oath, of legal authority requiring the statement, and an opportunity for cross-examination. When these important tests of truth are not wanting, and the testimony of the statements of the deceased witness is on a subsequent trial between the same parties, touching the same subject-matter, and open to all the means of impeachment and objections as to competency which might be taken if the deceased person could be personally presented as a witness, there would not appear to be any sound and satisfactory ground for its exclusion." *Summons* v. *The State,* 5 Ohio St. 323; 1 Greenl. on Ev., sec. 163.

This doctrine is fully sustained by the weight of authority in England. *King* v. *Radburne,* 1 Leach, 512; Buller's N. P. 242; *King* v. *Golliffe,* 4 T. R. 290; *Buckworth's Case,* Ld. Raym. 170; *R.* v. *Smith,* 2 Starkie, 186; *R.* v. *Beeston,* 29 Eng. L. & E. R. 527; 2 Lil. Abr. 745; *R.* v. *Rowley,* 1 Moo. C. C. 111; *R.* v. *Reed,* M. & M. C. 403; and *R.* v. *Carpenter,* 2 Show. 47.

In the United States it is equally as authoritatively and conclusively settled, and the practice is the same in civil and criminal cases as to the introduction and competency of such evidence. *United States* v. *Macomb,* 5 McLean, 286; *Greenwood* v. *The State,* 35 Texas, 587. We also cite the following authorities, most of which are analogous to the case we are considering, because the testimony adduced was that of a witness who had, like Addington, died since giving the evidence on a preliminary examination before a justice of the peace, touching the same charge for which the accused was indicted: *Davis* v. *The State,* 17 Ala. 354; *Commonwealth* v. *Richards,* 18 Pick. 434; *The State* v. *Hooker,* 17

Vt. 658.    See, also, *United States* v. *Wood,* 3 Wash. C. C. R. 440 ; *Kendrick* v. *The State,* 10 Humph. 479 ; *United States* v. *Macomb,* 5 McLean, 286 ; and *Greenwood* v. *The State,* 35 Texas, 587, and cases therein cited.

The constitutional objection to the admission of such testimony—that "the accused shall be confronted with the witnesses against him"—has frequently been presented to the courts for adjudication, and is now no longer an open question.    The leading case is *The Commonwealth* v. *Richards,* 18 Pick. 434, where it was decided that the competency of such evidence was not affected by the provision in the Bill of Rights.    The provision of the Bill of Rights of Massachusetts, upon which that decision was rendered, was substantially the same as that to be found in the present Constitution of Texas, at section 10, Article 1, and the statutory requirements in Paschal's Digest, Article 2490.

To the same effect as the case of *The Commonwealth* v. *Richards* are the following cases : *Kendrick* v. *The State,* 10 Humph. 479 ; *Crawford* v. *The State,* Yer. (Tenn.) 60 ; *The State* v. *Carmey,* 9 Me. 408 ; *The State* v. *Hooker,* 17 Vt. 659 ; *Summons* v. *The State,* 5 Ohio St. 325 ; *Pope* v. *The State,* 22 Ark. 371 ; *People* v. *Murphy,* 45 Cal. 137 ; *State* v. *McO'Blemis,* 24 Mo. 402 ; *State* v. *Baker,* 24 Mo. 437 ; *State* v. *Houser,* 26 Mo. 431.

The 2d error assigned in this case is that "the court erred in permitting parol testimony to prove the mark of J. R. Washington's cattle."    It seems that Washington did at one time have a mark and brand, both of which were recorded ; but that he had sold all his cattle in that mark and brand to one Love.    Washington, however, by contract, still retained the possession and control of the cattle till Love paid the purchase money.    After making this sale Washington continued to brand his own cattle with the recorded brand which had been sold to Love, but used a different ear-mark, no doubt to distinguish the two stocks

of cattle. He had never had his new ear-mark recorded. The animal alleged to have been stolen had the recorded brand, but was marked with the new unrecorded mark of Washington. On the trial the brand was proved by the record, and Washington was allowed to testify as to the mark. This was not error.

Whilst our law in reference to marks and brands requires that both shall be recorded (Pasc. Dig., Art. 4655), yet it will be seen that a distinction is made between them when sought to be used as evidence, the language of the statute being: "No *brands* except such as are recorded by the officers named in this act shall be recognized in law as any evidence of ownership of the cattle, horses, or mules upon which the same may be used." Pasc. Dig., Art. 4659. This provision does not include *marks*, and the prohibition is, therefore, not applicable to marks.

Even in cases of brands when not recorded our supreme court has held that evidence showing the character and description of the brand might be admitted when the evidence was not offered or relied upon to prove title, but for the purpose, in connection with the other evidence, of identifying the animal with the one described in the indictment. *Poage* v. *The State*, 43 Texas, 454.

We are of opinion the charge of the court submitted to the jury all the questions legitimately growing out of the evidence, and certainly with great fairness to the accused. Upon the issues presented, whenever the jury became convinced and satisfied in their minds—as we think they were warranted in doing—that the witness Addington was not an accomplice or *particeps criminis*, there was abundant evidence to justify the verdict.

We see no error in the other rulings complained of. The judgment of the lower court is affirmed.

*Affirmed.*