No. 14,185.

PROCTOR *v.* THE PEOPLE.
(71 P. [2d] 806)

Decided September 13, 1937.

Mr. Morton M. David, Mr. Gustave J. Ornauer, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. Reid Williams, Assistant, for the people.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was found guilty of simple robbery of $19 in money from one Milton Yost, a prosecuting witness. In the application for supersedeas, nineteen assignments of error are urged, and counsel for both parties ask for the final determination of the case upon the application.

On the night of February 4, 1937, Yost was walking south on Champa street, between 20th and 21st streets, in the city of Denver, about 11:45 p. m. When he was near the center of the block, two men approached him from the opposite direction, and, as they came abreast of him, the defendant Proctor asked Yost for a match, and as the latter thrust his hands into his pockets Proctor grabbed Yost's left arm, thrusting it deeper into his pocket, throwing Yost off his balance. Proctor then struck Yost on the chin, knocking his hat and glasses off into the gutter as he fell down. Proctor then proceeded to take Yost's money and billfold from the latter's hip pocket. During the altercation and alleged theft, the other man (who was never identified) was standing

against the wall of the building fronting on the street immediately opposite the place where Yost was allegedly robbed. Yost was not unconscious any of the time, and raised himself sufficiently to see both men hurriedly cross to the other side of Champa street and down to the corner of Champa and 21st streets, where they entered the door of the New Carioca cafe.

Yost got up as quickly as he could and followed them, and when he came to the cafe he looked in the window and saw the defendant Proctor sitting in the end booth. Yost then entered and went to the end of the bar and asked to borrow a nickel from the proprietor, Katchen, pointing out to Katchen the defendant Proctor, and saying that he wanted to call the police. All of this transpired in about five minutes from the time that Yost had first seen the defendant Proctor. In a few minutes police officers Toll and Wery arrived and took Yost, and defendant Proctor, and several of the witnesses back to the police office for further questioning.

The testimony shows that the defendant Proctor had been in the New Carioca cafe most of the evening, but that he had been in and out on at least three different occasions, the last one being approximately at 11:45 p. m., when he admitted leaving the cafe to go to some place near by to buy a bottle of wine. It also appears that Proctor had been more or less a regular patron since last October, and, that on this particular evening, he was in there with several of his friends, all of whom testified in his behalf at the trial. The police officers in their testimony substantiated the story of Yost, in so far as it pertained to his face and clothes being bloody, and testified that when they reached the cafe he was holding a bloody handkerchief to his mouth and nose. On the question of the fact of robbery, the evidence is in irreconcilable conflict. This being so, we are not concerned about disturbing the verdict on account of the conflict in evidence.

Of the nineteen assignments of error, we shall consider

only the five which counsel for defendant urges with any merit. (1) That defense counsel was not permitted to recite and explain to the prospective jurors a specific instruction on the law of alibi. (2) That the trial court erred in submitting an instruction on the question of flight, when the evidence failed to disclose that there was flight, or attempt to flee. (3) That the trial court permitted the district attorney to ask one of the alibi witnesses as to whether he had "served time" in Canon City. (4) That proper foundation was not laid for questions of impeachment. (5) That the trial court erred in refusing to grant a new trial on account of newly discovered evidence.

■ 1. To support his contention that he had a right to interrogate a prospective juror on a specific instruction covering the law of alibi, defense counsel cite the cases of *Henwood v. People,* 57 Colo. 544, 143 Pac. 373, and *Zancannelli v. People,* 63 Colo. 252, 165 Pac. 612. Neither one of these cases is authority for this contention. The most that can be urged for them is that they hold that the defendant is entitled to be fully informed of the state of mind of the jurors with reference to the matter of making a peremptory challenge. There was no denial of that in this case. Not even a judge can say, before any evidence is introduced, what instructions can or should be given, and, consequently, it can not be said to be error for the trial court to refuse to permit interrogation of an instruction that may or may not be ultimately given.

The attempt on the part of the defendant to establish an alibi was very much weakened by his failure to show, or attempt to show, from whom he bought the bottle of wine that he said he was getting during the time that the alleged robbery was committed. If he bought this bottle of wine where he said he did (the name of the place was not even mentioned), it would have been very easy for him to establish this purchase. His failure to

supply this very imporant link in his testimony was undoubtedly properly noted by the jury.

2. The court's instruction on flight was as follows: "If you find from the evidence beyond a reasonable doubt that the crime charged in the information was committed by some person, and that immediately after such crime was committed the defendant fled, such flight would be a circumstance, not sufficient in itself to establish the guilt of the defendant, but a circumstance which you may consider, in connection with all the other facts and circumstances proven at the trial, in determining the question of the guilt or innocence of the defendant. It is for you to determine from the evidence whether such flight was caused by a consciousness of guilt or by some other and innocent motive." Was there sufficient evidence to justify the giving of this instruction? We think there was. Yost testified that Proctor went hurriedly across the street, down to 21st street, and in the door of the saloon on the corner of 21st and Champa streets. Later, defendant, himself, testified: "When we started to go, Pete wanted to go down and see about a telegram and we started to go." He testified again: "And so we started to go." On cross-examination, defendant testified that he "ran to get a quart of wine and ran nearly all of the way back." We think that the above evidence was sufficient to justify the giving of this instruction so eminently fair to the defendant.

3. Prejudicial error is urged because the court permitted the district attorney, on cross-examination over the objections of the defendant, to examine the witness Fletcher as to whether he "served time" in Canon City. We have never so held. On the contrary, we have held that the extent to which cross-examination in such cases may go is largely within the discretion of the court, and mentioned without criticism, the fact that the history of the witness, his sojourn in jail, etc., had been gone into fully as a basis for the jury's judgment on his credibility. See also to the same effect, *State v. Rafferty*

(Kan.), 67 P. (2d) 1111, where it was recently held that the cross-examination of a alibi witness as to whether defendant had "served time" in the pen, and, for what, was allowed as affecting his credibility.

4. On the point that there was no proper foundation laid for the impeachment questions asked of the witness Katchen, the only comment we need to make is, that, tested by the rule cited from *Jaynes v. People,* 44 Colo. 535, at 541, 99 Pac. 325, by counsel for defendant, it is not even urged, much less shown, that the witness did not understand the matter about which he was being interrogated, or that he was misled. The particular question involved had to do with the cancellation of Katchen's license for failure to cooperate with the police department in this case, and since the jury could well have found the defendant guilty without any testimony from Katchen whatsoever, we can not see how the defendant was in any way prejudiced.

5. The so-called newly discovered evidence urged in the motion for a new trial, and as a basis for reversal here, is without merit. The two witnesses who filed affidavits in this connection say that they saw the defendant on the night of the robbery about 16 minutes to 12 o'clock walking on Champa street between 20th and 21st streets, and that no one was with him; that he did not stop, talk to, or rob, or in any manner approach any man, and that he had a package in his hand. It is obvious that this is all cumulative evidence, because several of the witnesses called by the defendant testified that defendant left the New Carioca Cafe about that time and came back with a package in his hand, and the alleged fact that these two witnesses (admittedly acquaintances of the defendant) did not see him rob any one certainly is not impressive. These same witnesses were in the court room during the trial. The only reason they assign for not informing defendant's counsel of what they knew was "that they thought they would get in a jamb if they got up and said anything while court was in session."

The defendant, himself, in describing several of the persons who were present at the New Carioca cafe, referred to them as being "the gang" or "the bunch," and it was their testimony on which he relied for acquittal.

There was sharp conflict in their testimony and that offered by the complaining witness and the police officers. The jury chose to believe the latter. Defendant was represented by able counsel who submit a good record. We think he had a fair trial.

The application for supersedeas is denied and the judgment affirmed.

Mr. Chief Justice Burke and Mr. Justice Hilliard concur.