No. 10,378.

CURTIS *v.* FARRAR.

Decided December 4, 1922.

Action to recover damages for assault and battery. Judgment for plaintiff.

*Affirmed.*

*On Application for Supersedeas.*

1. APPEAL AND ERROR—*Opening Statement.* Where an opening state-ment was interrupted by an objection of counsel, and the court thereupon declined permission to complete the objectional state-ment and instructed the jury to disregard it, it is held there was no prejudicial error.

2. EVIDENCE—*Hostile Witness—Explanatory Evidence.* Where a wit-ness was asked on cross-examination if he had not been un-friendly with the party against whom he appeared, for a long time, and it appeared from the examination that such was the case, it was proper on redirect examination to permit him to explain the new facts brought out by the cross-examination.

3. APPEAL AND ERROR—*Evidence—Harmless Error.* A judgment will not be reversed for the asking of an improper question, where an objection to it was sustained, and examining counsel cau-tioned not to repeat such questions.

4. INSTRUCTIONS—*Requests Refused.* Requested instructions are properly refused where they are fully covered in the instruc-tions given by the court.

5. APPEAL AND ERROR—*Instructions.* In an action for damages for assault and battery, the defendant may not object to the use of words in an instruction of the court, which he used in his answer concerning the subject of the instruction.

6. EVIDENCE—*Expert Testimony.* Testimony of a medical expert on the natural effect of a blow on the head from a stick, reviewed and held not objectionable.

The contention that there was no basis in the evidence for a question propounded to a medical expert regarding the effect of a blow which causes unconsciousness, considered, and overruled.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. REES D. REES, Mr. C. E. WAMPLER, for plaintiff in error.

Messrs. QUAINTANCE, KING & QUAINTANCE, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff, Farrar, brought this action to recover actual and exemplary damages for an assault and battery upon him by the defendant, Curtis, and was awarded a judgment in the sum of $1050.00.

The defendant struck the plaintiff a heavy blow on the back of the head with a heavy walking staff or cane, producing a deep wound. One of the defenses was self-defense, which, in substance, is that the plaintiff, without provocation or justification, assaulted the defendant with a deadly weapon, an ice pick, and in order to prevent the plaintiff from instantaneously inflicting great bodily harm or killing him, the defendant, believing that he was then in instant danger, struck plaintiff on his head with a wooden staff or cane which he then was carrying, and that, without any malice whatever on his part towards plaintiff, and for the sole and only purpose as he then believed, of saving himself from instant death or receiving great bodily harm and injury at the hands of the plaintiff, he so struck the plaintiff and used no more force than what he believed absolutely necessary to protect himself from instant death or serious bodily harm as alleged.

Numerous errors are assigned by plaintiff in error which have been combined under six heads:

1. In his opening statement to the jury plaintiff's counsel, among other things, said:

"The evidence will further show, gentlemen of the jury, that this is not the first occasion"—

He was interrupted by defendant's counsel, who said: "I object to that," and the following occurred:

"The Court: Do you mean that these two men had trouble?

Mr. Quaintance: No; that this is not the first occasion that this cane has been used.

The Court: Oh, no—do you mean that these two men had trouble, or some other people had trouble?

Mr. Quaintance: If your honor preferred, I could state it to you outside of the presence of the jury.

Mr. Rees: I ask—

The Court: I think you probably have stated enough. Ordinarily the opening statement of counsel does not include a very minute detail of the evidence; simply a general statement that on a certain date an assault and battery occurred under certain circumstances. That is usually sufficient in an opening statement. When you come to this particular item then we can discuss it, when it comes to the proof."

No evidence was offered as to the supposed use of a cane. Defendant's counsel says that this statement by plaintiff's attorney, though improper, might have been forgotten by the jury had it not been thereafter referred to in the testimony of Levings, a witness for the plaintiff. In other words, while plaintiff's statement, as shown by the foregoing extract from the bill of exceptions, might not, of itself, be reversible error, yet, taken in connection with the testimony of plaintiff's witness Levings, the cumulative effect was prejudicial. On cross-examination of Levings, it was developed that the witness had not been on friendly terms with the defendant for a long time. Upon re-examination by plaintiff's counsel, the court permitted the witness to state to the jury, in substance, that the defendant at one time had hit and knocked him down, and injured him, and defendant was arrested therefor. It is contended by defendant that Levings' testimony, on re-examination by plaintiff's counsel, was not competent under the issuable facts, because it concerned other similar instances, was an

admission of hostility, and an attempt to justify, is admissible only where the motive or intent of the defendant is involved, but was too remote to be proper under such an exception to the general rule, and was also an impeachment of plaintiff's own witness. A long list of cases is cited which defendant says makes the testimony of Levings irrelevant. We do not discuss these authorities, because we think they are inapplicable to the facts which the record discloses.

The opening statement of plaintiff's counsel to the jury certainly was not of itself prejudicial. He was interrupted by defendant's counsel before he had completed the sentence, and it is apparent that neither the presiding judge nor the jury knew whether plaintiff's counsel was about to say that other assaults by the defendant had been made on plaintiff, or upon a third person. Plaintiff's counsel says, in his brief, that what he had in mind, as testified to later by two of plaintiff's witnesses, was that earlier on the morning of the day of the assault and battery upon him, the defendant sought the plaintiff at another place and there made declarations of hostility to the plaintiff, coupled with the statements that he would "knock his block off" or "get his neck," and was carrying at this time the cane with which he struck the plaintiff instead of using crutches which he usually had with him, the defendant being a cripple. However that may be, we are of the opinion that this indefinite statement caused no injury to defendant, since the court declined to permit counsel to complete his sentence and immediately told the jury to disregard such statement. Aside from this, there was no exception by defendant to the ruling of the court. Indeed, the court ruled in his favor as against the plaintiff, just as asked by defendant himself.

Admission of Levings' testimony alone, or taken in connection with the opening statement of plaintiff's counsel, was not harmful. The record does not bear out the contention of defendant's counsel that it was an admission of hostility, or an attempt to justify. The court, at the time

of its reception, said to the jury that it was not to be taken in any sense as tending to show that the defendant was of a violent character, and should not be considered as having any bearing whatever upon that question. Its only purpose was to show any tendency it might have to indicate the state of feeling existing between the defendant and the witness and as affecting the credibility of the latter.

In the previous cross-examination of Levings by defendant's counsel, in language somewhat sarcastic, the witness was asked whether he enjoyed conversation or passing the time of day with defendant, to which the witness answered that it was not his fault. The witness then was asked if it was not true he had not had the pleasure of passing the time of day with, or speaking to, the defendant in a long time, to which the witness answered that he had not had that pleasure. Counsel then said: "If there is any luxury in talking to Charles Curtis, you do not enjoy it," to which the witness replied that he would enjoy the talk just as much as he would with anybody. It thus appears that it was the evident intention of the defendant's counsel to impress upon the jury the fact that the witness was hostile to the defendant, and, thereby, to weaken his testimony. If no further explanation was given, the jury might well imagine that the bad feeling was due to a variety of causes unfavorable to the witness. Upon re-examination the witness was permitted to testify, in answer to plaintiff's counsel, that a number of years ago there had been a personal altercation between him and the defendant. No details were entered into.

Defendant in his brief admits it would be proper, where upon cross-examination it is made to appear that a witness is prejudiced against the adverse party, for the party who offered the witness, upon re-examination, to show that, properly understood and explained, such facts as to the alleged bad feeling, show either no prejudice or very slight prejudice. But defendant says that where the counter-evidence admits the hostility of the witness and shows that it is justified, the offer is improper. To this defendant

cites 2 Wigmore on Evidence, section 952, subdivision 2. Tested by the rule invoked by defendant himself it seems clear that the ruling of the court, permitting Levings to testify to what occurred between him and defendant ten or more years previous to this trial, was not an admission of present hostility between them, and was justified by the conduct of the defendant, but its obvious purpose was to enable the jury to determine, from the facts as related by the witness, if hostility existed, and, if so, whether it was deep-seated or slight, whether it was explained away, or was likely to color his testimony. The witness did not testify that he had any such feeling of hostility as that it would color his testimony, and the fact that years before there was an altercation between defendant and the witness was a proper matter for the jury to consider as throwing light upon the credibility of the latter. Indeed, we do not see why the defendant did, or should, object to this testimony since its natural effect, if any, would likely be prejudicial to the plaintiff rather than to the defendant. In *Commonwealth v. Jennings,* 107 Mass. 489, 491, a similar question was before the court. There, on cross-examination, the defendant had asked a witness if Billings, who was one of the witnesses for the Commonwealth, had not had trouble and angry conversation with the defendant, and the witness said that he had, and upon re-examination the district attorney asked what the difficulty was between the defendant and Billings. Defendant objected to the question. The Supreme Court, in speaking on this point, said:

"The defendant offered evidence to show that there had been an angry controversy between him and Billings, one of the witnesses for the government. The purpose was to affect the credit of Billings. It was competent for the government to show what the nature of the controversy was, so that the jury might judge how far it would bias the witness and affect his credit. The extent to which such inquiry shall be carried is within the discretion of the presiding judge."

In *People v. Zigouras,* 163 N. Y. 250, 255, 57 N. E. 466, a witness for the defense had testified that the character of the deceased for violence was bad. On cross-examination by the people the witness testified that he had considerable feeling against the deceased, and added that he did not like him because he treated him badly, and that they had had considerable trouble and controversy. On redirect examination by the defendant, the witness was asked to state what the trouble was. The question was objected to and sustained, and an exception was noted. On this point the Court of Appeals said:

"The trouble was a new fact brought out by the People upon cross-examination. Confessed and unexplained, it tended to impair the force of the direct testimony. The trouble stated and understood might have removed or lessened the discredit which it tended to produce; might have restored the direct evidence to its original force, and possibly have increased its force. It was clearly competent. The general rule is that a witness may, upon redirect examination explain the new facts brought out upon cross-examination." Citing *People v. Buchanan,* 145 N. Y. 24, 39 N. E. 846.

The court then proceeds with a statement that the admission or rejection of testimony of the kind here complained of, "calls for the exercise of good sense and discretion upon the part of the trial court in limiting the details of the explanation, but it does not call for its exclusion," and "enough should be permitted to prevent a part of the truth from conveying a false impression." In that case it was held that the refusal of the court to permit the defendant's witness to state what the trouble was, was prejudicial error for which a reversal was had.

In *Lenfest v. Robbins,* 101 Me. 176, 180, 63 Atl. 729, 730, the defendant, on cross-examination by the plaintiff, had been asked if he had spoken to the plaintiff during the last two years, and was then asked: "Why didn't you speak to him?" This was objected to on the ground that it raised another issue, and the plaintiff claimed that he had a right

to show whether the trouble was his fault or the fault of his adversary, and to state what the trouble was so the jury might determine the extent of the bad feeling, and as bearing on the credibility of the witness. The trial court excluded the testimony offered, and upon this question the Supreme Court said:

"Standing unexplained, the conduct of the defendant might indicate a long standing hostility on his part at the time of the assault. It matters not who was in fault. The first ground stated as the purpose of the question is not tenable. To show who was in fault would be in effect to concede the hostility and justify it. The second ground stated however, rests on a solid foundation. The defendant had the right to show that the 'bad terms,' hostility, was not on his side. He had a right to explain the circumstance, and show that his failure to speak to the plaintiff did not indicate a deep-seated hostility, such as would be likely to lead him to assault him or to influence his testimony and affect his credibility at the trial."

It will be observed that in this case the court reversed the judgment for failure to permit the question to be asked upon the second ground stated. In the instant case, as in the Lenfest case in Maine, it was proper to show that the trouble in question, or the facts concerning it, did not indicate a deep-seated hostility, or color the testimony of the witness. The trial court immediately upon the receipt of the testimony properly instructed the jury for what purpose only they might consider it. Not only did the trial court so instruct the jury, but a short time thereafter, with the consent of plaintiff's counsel, the court withdrew this testimony from the jury and told them to disregard it entirely and pay no attention to it, and to eliminate it from their consideration of the case just as if it had never been given, and not to consider it for any purpose whatever. Counsel says that the prejudice which he claims was not removed by this instruction, because the jury were told that the withdrawal was by plaintiff's consent. We do not agree with this contention. As already stated, this

testimony was just as likely to be as harmful to the plaintiff as it possibly could be to the defendant, but, if it was hurtful to the defendant, the withdrawal, considering the instructions which the court at different times gave, removed any possible prejudice that might otherwise have been caused.

2.  Plaintiff's counsel asked the defendant on cross-examination if he did not come to Colorado to avoid the law of another state, to which the defendant objected, and the objection was sustained by the court, coupled with a caution to the jury to disregard it, and an admonition to the plaintiff's counsel that such questions must not be repeated. The question was improper, the court was right in sustaining the objection to it and in reprimanding plaintiff's counsel for asking it.  If the record impressed us with the conviction that the plaintiff's counsel was guilty of bad faith in propounding the question, or in wilfully attempting to get before the jury inadmissible, prejudicial facts, we might visit upon his client a reversal of the judgment, but the record does not indicate such bad faith.  It would be unusual for a court, at the request of an objecting party, to reverse a case because the court sustained his objection to an improper question.  In the case of *Henwood v. People*, 57 Colo. 544, 143 Pac. 343, Ann. Cas. 1916A, 1111, a question objected to, was held inadmissible by the trial court.  The Supreme Court said, though the question asked was improper, since an objection to it had been sustained, a reversal could not be had because of the ruling favorable to the objecting party.

3.  Complaint is made of the court's ruling refusing instructions Nos. 1, 2, 3 and 4 requested by the defendant. Whatever of merit these instructions contained was fully covered in the instructions which the court gave.  It is said, however, that the court committed error in stating to the jury that to maintain the plea of self-defense here interposed, the defendant must show that he was in danger of great bodily injury at the hands of the plaintiff.  Defendant says that such an instruction is applicable only in crim-

inal cases where the charge is murder or assault with intent to commit murder. In the instruction in the instant case the trial court said, in connection with the plea of self-defense, that if the jury finds from the preponderance of the evidence that, before the defendant struck the plaintiff, the plaintiff drew an ice pick and menaced the defendant therewith in such a manner that the defendant believed that he was about to be attacked by the plaintiff with the ice pick, and believed that the plaintiff was about to inflict great bodily injury upon him, and it was necessary to strike plaintiff to save himself from such injury, * * * the defendant acted in justifiable self-defense and a verdict for defendant should be returned. The court used the expression "great bodily harm" because the defendant in his answer, pleaded the defense in the exact language which the court used in its instruction.

It may be conceded that it was not necessary for the defendant, in his plea of self-defense, to allege, as he did, or to prove, that he was in fear of "great" bodily injury, or apprehended death, when he struck the plaintiff with his cane, but when he himself inserted these expressions in the answer, he may not be heard to object to the use of the same words by the court in its instructions.

We find no error in the instructions as given under the facts, of the case. This appears to be so when the testimony of the plaintiff and the defendant is summarized. The plaintiff was a younger and apparently a stronger man than the defendant. The defendant was a cripple, from an injury to his legs. The plaintiff was a dealer in ice and the defendant was one of his customers. There was a dispute between them as to an alleged unpaid balance the defendant owed for ice delivered by the plaintiff, and the defendant claimed that the plaintiff owed him a certain sum growing out of a trade or a deal in some articles of personal property, and that plaintiff, because of the dispute, had prevented defendant getting ice from other dealers. On the morning of the day of the assault the plaintiff was sitting on the porch of a neighbor's house when the de-

fendant drove up the street in front of the premises, and, seeing the plaintiff there, called to him to come out. The defendant got out of his automobile and started, with a cane in his hands, toward the house, and he testifies that, as it was difficult to walk with a cane, he asked the plaintiff to come to him and the plaintiff started towards the automobile. As the plaintiff approached, a conversation occurred between them, as to the nature and substance of which the plaintiff and defendant radically differ. The defendant says that as he approached him plaintiff drew from his pocket an ice pick or spike—a sharp, steel instrument several inches in length—and, while using abusive and insulting language, threatened to assault the defendant with this instrument, and it was in order to ward off the stroke or blow which he believed would kill him, or inflict great bodily injury upon him, that he struck the plaintiff with his cane. On the other hand, the plaintiff says that the conversation was amicable and that the defendant asked him if he would not call over to his house that day so that they might settle the controversy between them as to the indebtedness, and plaintiff, after having promised to do so, turned his back upon the defendant and started towards the house, when, without any menace or threat or warning on the part of the defendant, and wholly unsuspected by him, the defendant struck him the blow on the head which caused the injury for which this action is brought. The plea of self-defense was evidently based upon the testimony of the defendant himself that the plaintiff was approaching him in a threatening manner with a deadly weapon in his hand, and believing at the time that he was in danger of his life, or receiving great bodily harm at the hands of the plaintiff, he struck plaintiff on the head with his cane.

In the light of this testimony, and of the plea of self-defense in the answer, the court was justified in using in the instructions the very language which the defendant himself employed in his pleading, and to which the defendant himself had testified.

4. Complaint is made of the ruling of the court in admitting testimony of a physician, one of the plaintiff's witnesses, that a stick or cane one-half inch in diameter, like that used by the defendant in striking the plaintiff on the head as hard as he could, using both hands, would naturally be likely to produce a fracture of the skull, had the blow squarely and solidly fallen on it.

It is a little difficult to say on what ground the objection to the testimony is based, but it seems that it is because the physician thought that the blow was a glancing one, and therefore, the instruction, as to what effect a solid blow would have, would not be based on any evidence in the case. Without speculating as to this, it is sufficient to say that there is testimony of other witnesses, from which the jury might well find, that the blow was not a glancing one but that it fell squarely on the plaintiff's head. However that may be, we do not believe that the objection possesses any merit, or that it in any sense was prejudicial to the defendant.

5. It is also objected that the court committed error in allowing this physician to state to the jury what the frequent result from a blow on the head is, when the blow causes the one struck to become unconscious, because there is no evidence whatever that the plaintiff became unconscious as the result of the blow. This contention is not sustained by the evidence. The plaintiff testified that when the blow struck him he tried to keep himself up because he thought that if he went down the defendant would hit him while he was down. He said that his knees were giving and that was the last he remembered until they were taking him into the house. There was other testimony to the effect that this assault occurred in the street and plaintiff was picked up and carried into the house by persons who were then present. This objection is not good.

6. There are some other objections which we think are entirely devoid of merit, and we do not consider them. We have examined this voluminous record with care. The defendant was ably represented by counsel and the record

discloses that his interests were safeguarded and protected by his counsel throughout the long trial. Some errors of a minor character may have been committed, but they certainly were not prejudicial to the defendant. If the jury believed the evidence of the plaintiff and disbelieved that given by defendant and his witnesses, as they evidently did, the verdict was justified since no prejudicial errors were committed by the trial court.

The application for a *supersedeas* is denied, and the judgment is affirmed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BURKE concur.